Good morning, your honors. Paul Watford for Verizon California, Inc. I think the principle that controls the outcome in this case is fairly simple. And it's that a defendant seeking to remove a case to federal court does not have to conceive liability in order to get access to a federal form. That's essentially what the district court required in this case, and that's why I submit the district court's decision is wrong. The plaintiff's allegations in this case attack the legality of the entire billing system of the defendant, on the ground that there was no protocol, no check in place to ensure that every charge that was processed through that system was actually authorized by the customer. Those allegations necessarily put into controversy all of the charges generated by that system because, by definition, all of those charges may well have been unauthorized. Is that because you don't really have a – there's no ready way to authorize these charges or tell you that you don't want them? What would an authorized charge be? It would be a charge that the customer actually ordered and agreed to. The plaintiff's allegation is that what these third-party service providers do is that they simply get your name and telephone number, and that because of defects in the billing system that they're attacking, all the third-party service provider need provide is those two pieces of information, and boom, the charge appears on your phone bill, let's say. You never authorized it. You never wanted it. You never even knew that it was coming. So within the meaning of the complaint, as you're saying, these are all unauthorized. Whether or not they're entitled to recover is a different question. But, okay, so when you put in an affidavit stating that – it referred to what? All of the charges that were processed through this other defendant, ESBI, by Verizon, in excess of $5 million during the class period that the plaintiff had alleged in that complaint. And your position is that's all you have to show in order to show that the amount in controversy is more than that. That's exactly right. Because their allegations put into controversy call into question the legitimacy of all of the charges generated by that billing system. Is that – I'm not sure I understood their theory to be that. I thought their – and your explanation was if I'm a customer and I order something from Verizon, the plaintiffs are saying I got more than what I ordered. In essence, I asked for one thing and I got six other things that were bundled with it. That's what – is that not it? No. So these things just sort of – according to their theory, these things just sort of show up on your bill? That's right. And you didn't realize when you were ordering landline service that you were going to get all this extra stuff and pay for it. Well, no, just to be clear, these are not services ordered from Verizon. Right. These are services provided by somebody else, people who are not defendants here. Let's say – I'll just pick an example. Let's say it's a diet monitoring service, whatever that might be. Yeah. You get your phone bill and there's a – wait, $3.99? I didn't order that. That's the nature of their allegation, that somebody has simply gotten your name and phone number, provided it to this entity like ESBI, which then passes the charge on to Verizon and says, this person has authorized this. Please put it on their phone bill. And the person gets the bill and says, I never authorized this. I don't even know what this is. So this is not something that Verizon places on the bill simply because a customer ordered phone service. That's correct. That seems to be the confusion here. The premise of the district court's decision appeared to be that there were two categories of things, authorized and unauthorized. Right. And if I hear you, you are saying that there are no – within the way that this case is set up, there are no authorized. No, no, no. Let me be clear on that. Or be clear. Okay. Please. There certainly are authorized charges. Somebody may well have wanted that client monitoring service and may well have ordered it and provided authorization. And Verizon would put that on their bill and presumably they would see it and say, yeah, I ordered that. So just to be clear, there are two categories. And we certainly acknowledge that there are unauthorized charges. And when we get complaints about them, we typically refund the money to the person. What I'm saying is that the theory that they've alleged in that complaint is that the entire billing system is defective because for any given charge that's processed through that system, no authorization need have been provided. There's no check to ensure that the person on the other end who actually ordered the service really did want it. So some may be authorized and some are not. That's correct. But it's not material. But what? But because they're attacking the legality of the entire system, they've necessarily put into controversy all of the charges that are generated by that system. That's not how I read their complaint. Their complaint is challenging the unauthorized charges. They're not suing on behalf of the person who ordered the diet monitoring service. They're bringing a claim on behalf of all telephone subscribers where these charges just showed up that they never ordered. And so I don't understand what it is that Verizon is admitting to if it were to respond in establishing federal jurisdiction under CAFA that this portion of the billings, we were contacted by this outside billing service and told put these on the customer accounts. But we don't have any way of knowing at that point whether they were or were not. We're relying on what this outside billing service tells us when we add the charge. Right. All of the charges generated through the system are processed in that way. Is that clear in this record? I'm sorry? Is that clear in this record? Yes. I mean the district court, according to you, the district court got very confused. No, no. I don't think the district court was confused at all, Your Honor. I think what we came in and said is that look, here's the totality of the charges that are processed through the system. The district court said no, that's not enough. You need to tell me what portion of those charges really are unauthorized. And we said we're not obligated to do that because to do that we would have to confess liability. Why? Well, do you know? I mean, why would that be liability if you would say nobody called up and told the whoever, who is the customer dealing with? Verizon? No. No. ESBI, is that who they deal with? If this were a legitimate transaction, one that was authorized, they would be dealing with the third party service provider. They're not named in this case. It would be somebody, for example, providing the diet monitoring service. Do you know who has told the third party service provider to provide this and who has not? Does the third party service provider tell you, just tell you to provide it? We get the charges through ESBI. ESBI is the middle man, the aggregator that sends us the charges. So do you know whether somebody's asked for those charges or not? No, unless somebody eventually complains and says, I never ordered this. As I said, in that situation, we typically refund the money. I'd like to just change just a little bit here to be sure I understand what the burden is in terms of the proof to establish removal jurisdiction here. I look at the McKee Foods case, and it seems to me that you really fall under the third prong, which is that if it's unclear or ambiguous from the face of a state court complaint whether the requisite amount in controversy is pledged, we apply the preponderance of the evidence standard. Do you agree that's the standard that we're dealing with here? Yes. Okay. And according to you, that burden has been met because? Because we have shown by preponderance of the evidence that the total amount of the charges processed through this system is more than $5 million. But that's not what the plaintiffs are talking about. They're talking about the unauthorized charges that were added to the bills, and that's a number that is less. Well, we don't know. That's my whole point. When we say unauthorized, let's get – this is so confusing. When you say unauthorized, you're talking about charges where nobody has called up the third party server to ask for them. They're fraudulent charges. They're fraudulent charges. That's exactly right. So when the district court says, no, Verizon, tell me exactly what portion of your total charges are unauthorized, the court is saying – the court is not saying tell me what portion of the charges is in controversy. It's saying what portion of the charges are the plaintiffs going to be entitled to recover. We don't have to show by preponderance of the evidence how much the plaintiffs are going to recover. Well, do you concede that when they haven't called up and ordered it, then they are entitled – you concede that they're entitled to a refund? Generally speaking, absolutely. It's a fraudulent charge. But in your affidavit, which is, I gather, the sole evidence substantiating the $5 million threshold. That's correct. All that the affidavit – the Verizon employee stated was that he'd reviewed the records on behalf of the ESBI to landline telephone subscribers in California from March 1, 2006 to the present. The records show that these subscribers were billed more than $5 million exclusive of fees and interest from that period. The records also show that the number of Verizon landline subscribers in California that were billed for ESBI charges during this period exceeds 100. That's just a bald recitation. It doesn't really address more than just to say we've taken all these phone bills. And you yourself, I think, have said they weren't saying that all of your bills were false. They were just saying that part of them were unauthorized. But this statement seems to go to the totality of the billing that occurred. And I don't see how that meets the preponderance standard insofar as the threshold here for what they're looking about. Well, Your Honor, all I would say is that the evidentiary record we've submitted here in this case is identical to the record that the defendant in Spivey v. Virtue submitted. But the Seventh Circuit has a different test than we do. No, it doesn't, Your Honor. I don't think that's right at all. I read the Spivey case, or Spivey, and that's how I read it. They apply the same preponderance of the evidence test. And what Judge Easterbrook said there correctly in our view is that you're not required to admit what portion of the total charges that have been put into play the plaintiff might be entitled to recover. Yeah, but following up on Judge Thomas' point, the Seventh Circuit said theirs is a plausibility standard. That's not preponderance of evidence standard. That's a plausibility standard. Your Honor, I don't think there's any difference in the threshold that the Seventh Circuit and this circuit apply. Well, let me ask you this. If we were to disagree a little bit on that, I'm not sure. I have a little trouble understanding the Spivey case anyway. But it isn't the information that is necessary in the records of the third-party provider. Don't they have the answer to this? If just assume that we decide that what is needed in this case is not your total billings, but the number of charges that were generated by ESPN by just knowing the phone number. The number of charges that were not authorized by ESPN. Yeah, yeah, yeah. But to put it in a different way, that were generated without any request or authorization. Sure. Okay. Isn't that information all available in the provider's records? It's not available to us. I understand that. If we were to, you know, you could do jurisdictional discovery and other things. We could get a fuller record here. Would there be any sense in doing that? If this case were litigated to the merits, we would eventually know that number. But our whole point is that to get into federal court, you don't have to come forward and prove the plaintiff's case. But you do have to show by a preponderance of the evidence that the amount of controversy is more than $5 million. They haven't pled a damages amount in their claim. Correct. And at this point, we don't know whether that $5 million threshold is met. And I'm having the same concern my colleagues are. The only thing I've got is a one-paragraph declaration from Paul Glover in which he says the total amount of charges that we billed at the request of ESBI was more than $5 million. That doesn't answer the question as to which portion of those charges were not authorized. Unless Verizon is willing to concede that none of them were authorized. But you obviously don't want to do that. No. But you bear the burden. And I don't think you've met it on the basis of that one-paragraph declaration. We do not bear the burden. Well, that's because you have conceded, is it not, that those are fraudulent. You wouldn't necessarily have to do that. You could just say, you could just put it in another terms and say that nobody called up and asked for something like that. That portion of the charges is what the plaintiffs would be entitled to recover. You agree with that. If they prove liability. Our whole point is that all we have to show by preponderance of the evidence is what's the amount of charges in controversy. If they're challenging the. The maximum amount that they could recover is that. If the violation rate. Is nobody ever authorized. If the violation rate turns out to be 100 percent, they will be entitled to recover all of that money. But they're not saying that, are you? They've never said, have they, that all of your phone bills are phony. They're saying that you cannot show that any particular charge that appears on a phone bill was in fact authorized. That's the very defect in the system they're challenging. OK. I think maybe we should hear from them. We'll give you a minute on rebuttal if we think it might help. Good morning, Your Honors. May it please the Court. Mike McMorrow on behalf of the plaintiff's appellee. So what's your claim? What are you. What is your claim? What are you trying to. Well, I think, Your Honors. I think there's a. I think there's a confusion. And it might be an engineered confusion that the appellant raises here. The appellant says that we have alleged that this entire system of billing is illegal and that therefore we've put all of their charges at issue. And that's just not the case. Now, I will say that we do think we have alleged that there are problems in their billing system and that there are a large number of people who are being charged for products and services that they have not. Or that they haven't even used. But there's a distinction here between the damages that we see and the injunctive relief. And I think if you think about that distinction there, that might, I think, bring some clarity. We're asking for injunctive relief. And that injunctive relief would make some prospective changes, unspecified as of yet, but some prospective changes to how they bill. And in that sense, it would affect everybody that they bill. But we're not asking for all of the money to be refunded. We're only asking for the amount that's on off the charges to individuals that were unauthorized to be refunded. What the defendants here have done is they've tried to kind of flip that whole idea. And they've essentially redefined our class from all subscribers who suffered losses or damages as a result of billing for unauthorized charges to simply all subscribers who have been billed for premium content. But do you know who they are? Other than the named plaintiff, no. We don't know who they are. We don't know what portion of the charges are unauthorized. But there are complaints that are made. There are refunds that are made. The appellant's counsel has even said there are fraudulent charges that are made. How are you going to find out? We'll take discovery from Verizon. We'll take discovery from ESBI. We might take discovery from third parties as well. For ESBI to say or for Verizon to say that it doesn't have the ability to determine whether these charges are fraudulent or not on an individual basis, I think is a bit facetious. No, I think what it's saying is, I thought what it was saying was it doesn't have that burden to determine for purposes of determining the amount and the total amount in controversy. If it was the maximum amount in controversy, theoretically it's possible that none of these were actually ordered. I would hope that it's not. I would hope that not all of the charges were unauthorized because I think that would raise graver concerns here. I'm a little confused about your position on the injunction versus the damages. Under CAFA, does the fact that you're seeking an injunction with respect to the entire billing system have anything to do with the minimum threshold amount? No, Your Honor, it doesn't. Okay, so we're going to get back then to what you've alleged specifically with respect to damages. And you say that your prayer in that regard was strictly for payment with respect to those third-party funds that were billed, or third-party claims that were billed inaccurately, is that correct? They were billed without authorization. Without, and you didn't specify how much that was? No, Your Honor. But is it possible that all of them are unauthorized? I suppose it's possible that all of them are unauthorized. Or at least a lot of them. A significant portion. But even if there's a significant portion, the way that this kind of turns a little bit to the evidence that the defendants have provided, if even one charge was authorized, they've failed to meet their burden because they haven't pled that there's – that none of them were authorized, then the fact that they have more than 5 million and more than 100 customers that were billed in this fashion, that would, I think, establish the jurisdictional amount and meet their burden. If every single one of the charges was unauthorized, then yes, the burden would be met. But if even – But as you stand here today, you can't say that there's even one that was authorized. Because the parties that you currently represent, who are the purported class representatives, brought their action because they were charged for services they didn't order. Yes, and I don't have any – I don't have any way of knowing who did authorize the charges because those people haven't reached out to class action lawyers to – Then why isn't the full amount of the billings that Verizon charged now in controversy? Well, they're not in controversy because, as I said, we've not placed them in controversy. Well, it is – Well, yes, you have. You have. You may have. Well, we have not asked for – we have not asked for a refund of all of those money. We've only asked for a refund of – Well, you may have. Yes, you may get a refund of the full amount if it turns out that none of them were authorized. If it turns out that they're unauthorized, it is theoretically possible. See, the assumption that some of these have been authorized and some of them have not is not in this record, is it? No. There's very little of a record. Right. We've filed the complaint. It was removed, and we filed for remand. The only evidence in the record is the statement of – the only evidence in the record is the statement of Mr. Glover. Yes, that the amount out there, the pot, the full pot is well over – Well, the statement of Mr. Glover in response to the allegations of the complaint that the only parties we currently know about on the plaintiff's side claim the charges were not authorized. And as far as the known plaintiffs are concerned at this time, none of the charges were authorized. Therefore, all the charges are in controversy. Well, if there's – I would agree that if there are no – that if there are no authorized charges, that $5 million would be in controversy. But I think there are – the burden is – the burden is the defendants to show the amount in controversy. By a preponderance where you don't state the claim. One alternative you did have, which you did not exercise, was to claim damages in your framing of the complaint that the damages were less than $5 million, in which case we would be looking at the defendant's burden in a different way. But that's not how you framed your complaint, counsel. This is true. This is true, Your Honor. However, it would not – without any discovery, there would be – it would be kind of foolish for anybody to, in this situation, to say we're seeking less than $5 million. I don't know how many class members there are. I don't know how much each of them were charged. And you don't want to argue that this pot is any smaller than it might be. Well, I don't want to – I don't want to preemptively limit or presumptively limit myself in order to avoid – in order to – In your position, you put the entire amount in controversy. Well, again, Your Honor, I don't think that we have put the entire amount in controversy. The defendant could put evidence – competent evidence – and I don't think that Mr. Glover's declaration is even competent evidence – in order to – it doesn't have to confess liability in order to remove. It doesn't have to say all of these were unauthorized in order to meet that $5 million threshold. It could estimate the complaint rates. It could estimate refund rates. It could – it could make some estimates as to the size of the cost. And I think that's right if you had either said the amount is less than $5 million or if you'd actually pled more than $5 million, you'd be in federal court. But by pleading it the way you've pled it, I'm now starting to think maybe Verizon is right. All I have to say is you're challenging the ESBI charges? We looked at our billings, and there's more than 5 million ESBI charges on the Verizon phone bills. Plaintiff is challenging all of them as unauthorized. That's what's in controversy. Well, and, Your Honor, I don't think – we are not challenging all of them. We are only challenging – I know, but you don't have any idea what that is. And so you've pled without saying. Can I ask you this? Under CAFA, can this be remanded later if there's – if it turns out that there might be evidence that there's really very little in actual controversy here? Just as a matter of theory. If at a preliminary stage it would appear that there's a great deal in controversy, then it turns out later that there's not. I'll be honest, Judge Sorgen. I really can't say whether it could be remanded later. I can say this. It could be removed later if it is remanded. Right. There is nothing to prevent Verizon from putting on additional evidence to show that there's actually $5 million in controversy. I'd also point out this, Your Honor. Verizon places the focus not on the claims of the plaintiffs, but on itself. 28 U.S.C. 1332 D6 states that the claims of the individual class member shall be aggregated to determine whether the matter in controversy exceeds the value or sum of $5 million. What Verizon does here is it sweeps away that entire argument. It doesn't focus at all on what the individual plaintiff's claims are, how many plaintiffs there are, or how much each of them are claiming. But you are bringing a putative class action in which the named plaintiffs currently before us are seeking to represent the entire class of all Verizon customers who were charged these amounts. And in other cases, even in Spivey v. Virtrue, which is the Seventh Circuit case that Verizon is asking this court to follow and to reject all of the lower court cases here, even in that case, in Brill, the other Seventh Circuit case that Verizon relies on, and in every case that I've seen where CAFA removal has been upheld, there has been a calculation made by the defendant. The defendant has said there are X number of class members and this is what they were charged. In Spivey, it doesn't appear in the Seventh Circuit record, but there's a discussion of it in the lower court. In Brill, it's in the Seventh Circuit record. And in all of the cases that I've seen where CAFA jurisdiction has been upheld, there has been an aggregation of the claims of the individual class members, and that's just not done here. There's no evidence provided by Verizon at all. But unless you're willing to concede that some number less than all are authorized, then it seems to me that you put in controversy every charge that Verizon laid on customers that ESBI asked it to add to their account. And I just don't think that we have, Your Honor. Well, which ones are not? I don't know. I think discovery will show that there are some that are authorized and some that are not. But you don't know that. There's no evidence that that's so. There is no evidence. But, you know, again, I'll go back to the burden. I mean, the burden is on Verizon to show by a preponderance of evidence that there is $5 million in controversy. They've done that by showing that we've billed more than $5 million and there are more than 100 customers involved here. And we have not asked for a refund of all of those $5 million. We don't know what portion of that $5 million that we've asked for a refund. But you're left open to that possibility. Right. That you're going to ask for a refund on behalf of 100%. And an injunction that may require Verizon to change all of its billing practices. But the injunction, Your Honor, is not the cost of the injunction to Verizon is relevant here if the injunction is entered. No, but the point is that this is a very sweeping class action. Well, it is. And by saying that the injunction, you want an injunction to change every one of these, it certainly reinforces the possibility that every one of these may have been on offer. It's just. I understand that you're put in a difficult position because you don't want to concede that the pot is any smaller. Well, and I think forcing a plaintiff to restrict a class, a class's recovery, a class of unknown size, in that way, in order to avoid federal court and in order to remand a case, I think that, again, unfairly flips the burden. So there has to be self-showing. Right. The position that the defendant has taken here and the position that all they have to do is to show their revenues, not even show their revenues, but just to state that their revenues are more than $5 million, it essentially takes the burden that has always been on the defendants in a removal and places that squarely on the plaintiff. How would you meet their burden? If you were they, how would you meet it other than confessing that there are a certain number of these that are in controversy because they're probably unauthorized? Judge Smith, I don't think that they have to confess in the first place. What do they do then? They can say that we've had X number of complaints. We get complaints of X percent of our customers from the charges that come through. But in a way, though, doesn't that poison the well for them? You would then take that before the jury and they've acknowledged that they've got a. . . They've acknowledged that some of these charges are fraudulent. In that sense, I am, Your Honor. But they don't have to concede liability. They can say that X percentage of these charges are contested. But that doesn't account for those who have been billed in an unauthorized fashion but don't realize that those charges are unauthorized. Well, and it's not perfect, Your Honor, but it's some evidence. They could put on some evidence to suggest what percentage of their charges are unauthorized and what their charges are. And they. . . Eventually, when they get to the merits, that evidence will be there. The question is whether or not they've met their burden now. Okay. Are there any further questions? Thank you, Your Honor. Are there any further questions of the appellant? No. All right. I think we've. . . We've got to. . . The case just argued is submitted for decision. That concludes the court's calendar for this morning and the court's manager. All rise. This question is subject to. . .
judges: Schroeder, Tallman, Smith M.